IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRESCIENT MEDICINE HOLDINGS, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) C.A. No. 18-600-MN <br> ) |
| LABORATORY CORPORATON OF AMERICA HOLDINGS, LABORATORY CORPORATION OF AMERICA, AMERIHEALTH, INC., and AMERIHEALTH CARITAS DELAWARE, INC., | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Richard H. Cross, Jr., CROSS & SIMON, LLC, Wilmington, Delaware. Daniel W. Tarpey and Matthew M. Showel, TARPEY WIX LLC, Chicago, Illinois. Attorneys for Plaintiff.

Raymond J. DiCamillo, Chad Shandler, Katharine L. Mowery, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware. Steven F. Barley, Marc A. Marinaccio, HOGAN LOVELLS US LLP, Baltimore, Maryland. J. Robert Robertson, HOGAN LOVELLS US LLP, Washington, DC. Attorneys for Defendants Laboratory Corporation of America and Laboratory Corporation of America Holdings.

Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware. Eric Kraeutler, Steven A. Reed, R. Brendan Fee, Zachary M. Johns, Alexandra M. Lastowski, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania. Attorneys for Defendants AmeriHealth, Inc., and AmeriHealth Caritas Delaware Inc.

February 14, 2019
Wilmington, Delaware

*signature: Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Prescient Medicine Holdings, LLC ("Prescient"), a company that provides laboratory testing services, alleges that Defendants have conspired to exclude Prescient from providing those services to the Delaware market. There are two groups of defendants, Laboratory Corporation of America and Laboratory Corporation of America Holdings (collectively "LabCorp") and AmeriHealth, Inc., and AmeriHealth Caritas Delaware Inc. (collectively "AmeriHealth" and collectively with LabCorp "Defendants"). LabCorp, like Prescient, provides laboratory testing services. (D.I. 1 ¶ 17). AmeriHealth is a managed care organization that has selected LabCorp as one of its "in network" providers. (D.I. 1 ¶ 1).

In its Complaint (D.I. 1), Prescient asserts federal and state law claims against Defendants. The federal claims arise under Sections 1 and 2 of the Sherman Act (Count I and Count II) and Section 16 of the Clayton Act (Count III). (D.I. 1 ¶¶ 42-58). The state law claims are based on the Delaware Deceptive Trade Practices Act (Count IV), Fraud (Count V), Civil Conspiracy (Count VI), Tortious Interference with Contract (Count VII), Deliberate Interference with Prospective Business Opportunity (Count VIII), and Business Defamation (Count IX). (*Id*. ¶¶ 59-100). Pending before the Court are Defendants' motions to dismiss all claims of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1] (D.I. 14, 16). The Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and over the state law claims pursuant to 28 U.S.C. § 1367. For the following reasons, the motions to dismiss will be granted.

---

[1] AmeriHealth also moved to dismiss the fraud and Delaware Deceptive Trade Practices claims pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

I.      **BACKGROUND**

Under the Social Security Act, states may delegate management and administration of Medicaid healthcare programs for low-income populations to privately managed care organizations. *See generally* Medicaid Managed Care, 81 Fed. Reg. 27498, 27500 (May 6, 2016). AmeriHealth is one of two managed care organizations selected by the Delaware Department of Health and Social Services, Division of Medicaid and Medical Assistance, "to provide managed Medicaid services in the state of Delaware." (D.I. 1 ¶ 10). "In its role as a managed care organization . . . for Delaware Medicaid, AmeriHealth can choose which health care service providers it will allow into its network . . . ." (*Id.* ¶ 11). "In network" means that Medicaid "will reimburse the provider for a portion of the patient's services, thus lowering the out-of-pocket costs to the patient." (*Id.*). In December 2017, Prescient applied to be included as an "in network" provider for AmeriHealth. (*Id.* ¶ 36). AmeriHealth instead selected LabCorp as its exclusive in network provider of laboratory services for Medicaid patients in the state of Delaware. (*Id.* ¶ 38).

LabCorp is based in North Carolina and provides laboratory services nationwide. (*Id.* ¶¶ 5, 17-18). For several years, LabCorp provided laboratory services to patients of a Delaware non-profit named Connections Community Support Programs, Inc. ("Connections"). (*Id.* ¶¶ 26, 28). In January 2018, Connections entered into a Laboratory Services Agreement with Prescient to replace LabCorp as Connections' laboratory services provider. (*Id.* ¶ 32). According to the Complaint, LabCorp's Michael Schooley told Connections that Medicaid would not reimburse claims for laboratory services provided by Prescient, because Prescient was not an "in-network" provider with AmeriHealth. (*Id.* ¶¶ 34, 35, 37). After learning that AmeriHealth had denied Prescient's application to be an in-network provider, Connections decided to keep LabCorp as its laboratory services provider. (*Id.* ¶ 40).

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, and items subject to judicial notice. *Siwulec v. J.M. Adjustment Serv., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012).

## III. DISCUSSION

To plead an antitrust claim, the complaint must allege sufficient facts to show (1) antitrust standing and (2) a relevant market. *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013) (stating that an antitrust injury is threshold requirement); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 435 (3d Cir. 1997) (stating that a relevant market is "a basic pleading requirement"). Defendants argue that Counts I-III of the Complaint fail to satisfy either of these threshold requirements. (D.I. 15 at 9-12; D.I. 17 at 3-8). The Court agrees.[2]

---

[2] Defendants also argue that the Complaint fails to adequately plead essential elements of a claim for violation of Section 1 or 2 of the Sherman Act. (D.I. 15 at 12-16; D.I. 17 at 8-14). Because Prescient's Complaint fails to satisfy the threshold requirements of standing and relevant market, however, the Court does not address Defendants' arguments regarding the other essential elements of an antitrust claim. In addition, the Court declines to exercise supplemental jurisdiction over Prescient's state law claims in Counts IV – IX. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction").

## A. Antitrust Standing

The standing analysis in antitrust cases recognizes that "a balance must be struck between encouraging private actions and deterring legitimate competitive activity through overly vigorous enforcement." *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998) (citing *Capital Imaging Assoc. v. Mohawk Valley Med. Assoc.*, 996 F.2d 537, 539 (2d Cir. 1993)). Antitrust standing is a prudential, rather than a constitutional, limitation on the district court's jurisdiction. *Shionogi Pharma, Inc. v. Mylan, Inc.*, No. 10-1077, (MMB), 2011 WL 2550835, at *3 (D. Del. June 10, 2011). To plead antitrust standing, a plaintiff must allege, among other things, sufficient facts to show that it suffered an "antitrust injury."[3] *Ethypharm*, 707 F.3d at 233. Antitrust injury requires: "(1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful." *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) (quoting *Gulfstream III Assocs. Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993)).

Federal antitrust laws were enacted for "the protection of competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Therefore, "'[a]n antitrust plaintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services,' not just his own welfare." *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (quoting *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991)). In addition, the plaintiff must demonstrate that "the challenged action has had an actual adverse effect on competition as a whole in the relevant market, not just on plaintiff as a competitor." *Irish v. Ferguson*, 970 F. Supp. 2d

---

[3] Although antitrust injury is only one of the factors considered in an antitrust standing analysis, if antitrust injury is lacking, the court need not address the remaining factors. *Ethypharm*, 707 F.3d at 233.

4

317, 365 (M.D. Pa. 2013) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 180 (S.D.N.Y. 2006) (internal punctuation omitted)).

Prescient argues that it suffered an antitrust injury "in the loss of its contract with Connections and other loss of income." (D.I. 24 at 6). This, however, is an injury to Prescient's own business interests, and is not enough by itself to establish antitrust injury. *See Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 344 (3d Cir. 2018) (finding that "[c]onduct that merely harms competitors, while not harming the competitive process itself" did not establish an antitrust injury (internal punctuation omitted)); *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001) *aff'd*, 484 F.3d 644 (3d Cir. 2007) (stating that a plaintiff "personally aggrieved" by the challenged action "has not suffered an antitrust injury unless the activity has a wider impact on the competitive market").

The cases Prescient cites, in support of its argument that its individual harm is sufficient to establish an antitrust injury, are either inapplicable or distinguishable. (D.I. 24 at 6). In *In re Lower Lake Erie Iron Ore Antitrust Litigation*, the court addressed whether plaintiffs were directly or indirectly harmed because "indirect purchasers" lack standing. 998 F.2d 1144 (3d Cir. 1993). This Court is not confronted with the issue of whether Prescient's injury is direct or indirect. In *In Palmyra Park Hospital, Inc. v. Phoebe Putney Memorial Hospital*, the court found that a plaintiff-hospital had antitrust standing when it was denied in network status by the largest private insurer in the relevant market, because the plaintiff had alleged "tying claims," which "are the type of injury that the antitrust laws are designed to remedy." 604 F.3d 1291, 1303 (11th Cir. 2010). Specifically, the defendant, another hospital like plaintiff, threatened to demand significantly higher rates from the insurer for "tying products" (products over which defendant had a monopoly) if the insurer contracted with the plaintiff for products over which defendant did not have a

monopoly. *Id*. at 1297, 1301. As a result, "the tying arrangements contribute[d] to the region's higher-than-average healthcare costs." *Id*. at 1297. Prescient's Complaint does not allege tying claims. Finally, in *Angelico v. Lehigh Valley Hospital*, the Third Circuit reversed the district court's finding of no antitrust standing, because the plaintiff had been "shut out of competition" by defendants' conspiratorial actions. 184 F.3d 268, 274 (3d Cir. 1999). There are no allegations here, however, that Prescient is completely shut out of the market, particularly given that AmeriHealth is only one of two managed care organizations that could select Prescient as an in-network service provider for Delaware Medicaid patients.[4] *See Bocobo v. Radiology Consultants of South Jersey, P.A*., 477 F. App'x 890, 898 (3d Cir. 2012) (affirming district court's finding of no antitrust standing and distinguishing *Angelico* because plaintiff had not shown that he was "excluded entirely" from the relevant market); *Volm v. Legacy Health Sys., Inc*., 237 F. Supp. 2d 1166, 1173-74 (D. Or. 2002) (distinguishing *Angelico* because plaintiff, who was banned from providing services at any of defendant's hospitals, did not suffer antitrust injury when plaintiff was still able to work at other hospitals and thus had not been completely shut out of the market). Accordingly, Prescient has not shown that the individual harm to its own business interests from the lost contract and loss profits is the type of injury the antitrust laws were designed to remedy.

In an effort to show adverse effects to the whole market, Prescient asserts that Delaware Medicaid patients are receiving "lower quality health care at higher costs." (D.I. 24 at 6-7; D.I. 1 ¶ 41). The Complaint's allegations as to "higher costs," however, are conclusory and unsupported by any allegations of fact. A court "need not accept as true 'unsupported conclusions and unwarranted inferences.'" *City of Pittsburgh v. West Penn Power Co*., 147 F.3d 256, 263 n.13

---

[4] There are also no allegations that patients in Delaware with other forms of insurance or no insurance at all cannot access Prescient's services.

(3d Cir. 1998) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)). As for lower quality care, Prescient alleges that Delaware Medicaid patients "are being deprived of the ability to receive Prescient's unparalleled testing methodologies, efficiencies and accuracies which assist in diagnosis and which LabCorp's testing does not." (D.I. 1 ¶ 41). According to Prescient, Delaware Medicaid patients are also being deprived of Prescient's "genetic testing that is not otherwise available in the market." (D.I. 24 at 7 (citing D.I. 1 ¶¶ 22-23, 41)). Another court has faced very similar allegations. *See Med. Diagnostic Labs., LLC v. Indep. Blue Cross*, No. 16-5855, 2017 WL 3776619, at *5 (E.D. Pa. Aug. 30, 2017). It concluded that these types of allegations boil down to a claim that the plaintiff is superior to the defendant, which "[e]ven if true, . . . does not translate into a market-wide reduction in the quality of products available to consumers." *Id.* This Court agrees.

Prescient argues that its allegation of superiority shows a market wide reduction in quality, because "LabCorp is the market, as it is the sole provider of in network laboratory services to Delaware Medicaid patients." (D.I. 24 at 7 (citing D.I. 1 ¶38)). The Complaint itself alleges, however, that AmeriHealth is only one of two managed care organizations selected to provide managed Medicaid services in the state of Delaware. (D.I. 1 ¶ 10). Each managed care organization chooses which health care service providers it will allow into its network. (Id. ¶ 11). There are no allegations in the Complaint regarding the second managed care organization and which laboratory service providers it has selected. Accordingly, Prescient has not plausibly alleged that LabCorp is the entire market. Given the forgoing, Prescient has also not alleged an antitrust injury. As a result, Prescient's antitrust claims (Counts I-III) must be dismissed because Prescient lacks antitrust standing.

B.  **Relevant Market**

As a prerequisite to any antitrust claim, the plaintiff must allege a relevant market in which the anticompetitive effects of the challenged activity can be addressed. *E. & G. Gabriel v. Gabriel Bros., Inc.*, No. 93-0894 (PKL), 1994 WL 369147, at *2 (S.D.N.Y. July 13, 1994); *see also Lifewatch Serv. Inc. v. Highmark Inc.*, 902 F.3d 323, 336 (3d Cir. 2018) (explaining that without an accurate definition of the relevant market the court cannot assess the effect of the challenged activity on competition). The relevant market has two components: a geographic market and a product market. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998). The burden is on the plaintiff to define both components. *Id.* Defendants argue that Prescient fails properly to define either market.

1.  **Relevant Geographic Market**

The relevant geographic market is "the area in which a potential buyer may rationally look for the goods or services he or she seeks." *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 260 (3d Cir. 1984). Stated differently, "the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product." *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 726 (3d Cir. 1991); *see also Dicar, Inc. v. Stafford Corrugated Prods., Inc.*, No. 2:05-5426 (DMC)(MF), 2010 WL 988548, at *11 (D.N.J. Mar. 12, 2010) ("[T]he question is 'how far consumers will go to obtain the product or its substitute in response to a given price increase.'") (quoting *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 227 (2d Cir. 2006)). "The mere delineation of a geographical area, without reference to a market as perceived by consumers and suppliers, fails to meet the legal standard necessary for the relevant geographic market." *Tunis*, 952 F.2d at 727.

Here, the Complaint fails to define a relevant geographic market according to where customers – *i.e.*, Delaware Medicaid patients – can rationally look for laboratory services.[5] Instead, the Complaint refers to a geographic area in which Prescient would like to offer services – Delaware and perhaps also nationally. (*See* D.I. 1 ¶ 29 (discussing Prescient's application to provide services in Delaware), *id*. ¶ 45 (alleging that Defendants' conduct has impeded Prescient's ability to develop as an effective rival to LabCorp's national monopoly); *id*. ¶¶ 57-58 (stating that an injunction "will enhance national competition")). The Complaint also refers to the geographic area where LabCorp offers services, *i.e.,* nationally. (*See*, *e.g*., D.I. 1 ¶ 1 (referring to LabCorp's national monopoly), *id*. ¶ 17 (alleging that LabCorp "maintains one of the largest clinical laboratory networks in the world, with operations in more than 60 countries"); *id*. ¶ 18 (referring to LabCorp's "dominant market share in the U.S. laboratory services")).

It is unclear why the Complaint repeatedly references a "national" market when Prescient argues in opposition to the motion to dismiss that the relevant geographic market is Delaware. (*See* D.I. 23 at 8-10). Nevertheless, because the allegations in the Complaint consider only where the parties offer services and not where customers can rationally look for services, the Complaint fails to define a relevant geographic market. *See Med. Diagnostic Labs.*, 2017 WL 3776619, at *6 (dismissing complaint for failure to adequately allege a relevant geographic market because

---

[5]  Defendants argue that the appropriate customers by which to define the relevant market are not Delaware Medicaid patients but insurers that would select Prescient as an in-network provider. (D.I. 26 at 5). Defendants further argue that if the relevant market is defined according to the patients on whom the laboratory services are performed, then it should not be limited to Medicaid patients, but also include patients covered by other forms of insurance, both government and private. (D.I. 17 at 8 n. 6). In at least one case where a supplier of medical services was shut out by an exclusive contract, the court held that the relevant market cannot be defined by how the consumers paid for the medical services. *See*, *e.g*., *Little Rock Cardiology Clinic, P.A. v. Baptist Health*, 591 F.3d 591, 597 (8th Cir. 2009). Nevertheless, for the purposes of the present motion, the Court assumes that the customers by which to define the geographic market are Delaware Medicaid patients.

9

relying on a competitor's "area of operation" without reference to "where a purchaser can look to purchase [laboratory] testing" is insufficient); *Dicar*, 2010 WL 988548, at *11 (granting motion to dismiss because complaint "focuses impermissibly on the specific geographic market in which Plaintiffs (*i.e.*, manufactures) conduct their business – as opposed to the geographic market that consumers would be willing to access to purchase [the relevant product]").

In opposing the motion, Prescient argues that the geographic market is in-network providers within the state of Delaware, because Delaware Medicaid patients "cannot practicably turn to out of state or out of network providers, as they do not have the funds to pay for these services." (D.I. 24 at 8). Prescient may be correct, but the Complaint itself is devoid of allegations that Delaware Medicaid patients seeking laboratory services are geographically limited to in-network providers who are also within the state of Delaware. A plaintiff "may not amend his complaint through his opposition brief." *Weih Chang v. Bradley*, No. 16-1008 (CFC), 2018 WL 5891688, at *4 (D. Del. Nov. 9, 2018). Accordingly, Counts I-III are also dismissed without prejudice, because the Complaint fails to plead the relevant geographic market as required to state an antitrust claim.

### 2. Relevant Product Market

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Queen City Pizza*, 124 F.3d at 436 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)); *see also United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956) (stating that the relevant product market is defined as those "commodities reasonably interchangeable by consumers for the same purposes"). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and

cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza*, 124 F.3d at 436.

The Complaint here describes the relevant product market as "laboratory services," but does not identify which laboratory services are a part of the relevant product market, let alone which services are reasonably interchangeable. A bare allegation of "laboratory services" is too broad and imprecise by itself to adequately define the relevant product market. *See Sidibe v. Sutter Health*, No. 12-04854 (LB), 2013 WL 2422752, at *15 (N.D. Cal. June 3, 2013) (dismissing complaint that described relevant product market as "health care services [accessed] through health [insurance] plans" because plaintiffs "do not allege specific products . . . that compete with each other"); *Kassner v. Kadlec Reg'l Med. Ctr.*, No. 11-5114 (RMP), 2012 WL 523675, at *5 (E.D. Wash. Feb. 15, 2012) (dismissing complaint for failure to adequately allege a product market because "imprecise references to 'medical services'" does not distinguish between different types of services leaving "no basis upon which to evaluate interchangeability for an antitrust claim"); *see also Rock v. Nat'l Collegiate Athletic Ass'n*, 928 F. Supp. 2d 1010, 1022 (S.D. Ind. Mar. 1, 2013) (granting motion to dismiss because relevant product market was "impermissibly broad in that it includes all student-athletes in the same labor market without accounting for germane differences such as gender and sport played"); *In re National Ass'n of Music Merch., Musical Instruments & Equip. Antitrust Litig.*, MDL No. 2121, 2011 WL 3702453, at *4 (S.D. Cal. Aug. 22, 2011) ("Grouping various musical instruments and amplifiers together results in an unidentifiable and overly broad market, primarily because fretted musical instruments are not reasonably interchangeable.").

Prescient argues that the Complaint adequately addresses reasonable interchangeability in alleging that Connections replaced LabCorp with Prescient as the provider of its laboratory services. (D.I. 24 at 9; D.I. 1 ¶ 32). According to Prescient's theory of the case, however, the relevant customer defining the product market is Delaware Medicaid patients, not community support programs like Connections. Further, there are no allegations in the Complaint that the citizens who receive services from Connections are all Delaware citizens, all have health care insurance, and that the health care insurance is Medicaid. Thus, the allegations regarding Prescient's replacement of LabCorp as the laboratory services provider for Connections do not help define the relevant product market. Given the foregoing, the Complaint also fails to allege a relevant product market and, therefore, the antitrust claims (Counts I-III) must also be dismissed on that ground.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) (D.I. 14, 16) are granted. The Complaint is dismissed without prejudice. An appropriate order will be entered.